IN THE UNITED STATES DISCTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
January 28, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
DEPUTY CLERK

| | |
|---|---|
| JOHNNY RAY WARDEN, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:25-cv-00812 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| PULASKI COUNTY DEPARTMENT ) | Chief United States District Judge |
| OF SOCIAL SERVICES, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Pro se plaintiff Johnny Warden, Jr. moves for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(a)(1). For the following reasons, the court will grant Warden's motion for leave to proceed *in forma pauperis* (ifp) (Dkt. No. 2), but it will sua sponte dismiss his complaint (Dkt. No. 1) without prejudice because the only named defendant is entitled to state sovereign immunity.[1]

I. BACKGROUND

Warden's pro se complaint names a single defendant: the Pulaski County Department of Social Services ("Pulaski DSS"). He alleges that his parental rights were violated without due process of law by defendant. Specifically, he alleges that in May 2023, defendant, via "CPS Investigator Krystafre Kyle" visited his residence because he was allowing his son's friend, a juvenile, to be placed in his home because of abuse at the friend's own home. While there, Ms. Kyle interviewed Warden, inspected his residence, and said everything was "good to go" and that

---

[1] This court previously dismissed another complaint filed by Warden against the Pulaski DSS for the same reasons. *Warden v. Virginia Dep't of Soc. Servs. (Pulaski Cnty.)*, No. 7:23-CV-00775, 2023 WL 8481014, at *1 (W.D. Va. Dec. 7, 2023). In that case, Warden failed to include the same amount of detail as he has in this complaint. *See id.* at *2 (noting that the complaint referenced an attached written statement, but none was included).

the child would be officially placed with him after Warden passed a urinalysis. (Written Statement 1, Dkt. No. 1-1.)

Kyle later told him that he had failed the urinalysis and that the juvenile could not be placed with him. She further advised that Warden's own children, who were at school that day, would be removed from his home. There was no evidence of abuse or neglect and no other complaints against him. He contested this decision verbally with Investigator Kyle, but she told him that he would have to contact a family member to sign a safety plan removing them. If he did not, the children would be placed in foster care as soon as they stepped off the bus. He reluctantly agreed to sign the waiver form, allowing the children to be placed temporarily with his mother. He alleges that he was never informed that the decision could be made or reviewed in court, nor was he notified of any right to appeal. (*Id.* at 1–2.)

In June 2023, there was a "family partnership meeting" in which members of the department met with Warden and his mother, reiterating the May decision. (*Id.* at 2.) After that, he was visited three times, passed a urinalysis on the last visit, and his case was closed on October 24, 2023, for the reason of "non-compliance of services." (*Id.*) There was never a determination of founded or unfounded. He says that a different investigator from Richmond, Virginia, who "camped out" with the department for two weeks, later advised him that his case "was not handled right by any means" and "would never happen again." (*Id.*)

Warden asserts that these events caused him emotional and psychological harm and damaged his reputation and family relationships. He also incurred significant financial expenses because he "forfeit[ed] all of [his] belongings" in his home and "moved and converted a garage to living quarters" so that he could live on the same property as his children. (*Id.* at 2.) He asks

2

for compensatory damages in the amount of $150,000 and $350,000 in punitive damages. (*Id.* at 2–3.)

Warden's complaint invokes the court's federal question jurisdiction under 28 U.S.C. § 1331. (Compl. 3, Dkt. No. 1.) He also states that he understands that the department is protected under the Eleventh Amendment, but he argues that immunity should not apply to this situation or serve as a "blanket of protection" because this was "not an oversight or a simple mistake." (Written Statement 3.) Instead, it was a "systematic failure that cost a single father of nearly 14 years, essentially everything that matters in life." (*Id.*) He asserts that such crucial rights "should not be able to be stripped away without due process, [w]ithout any type of oversight, and certainly not by a single organization who vows to support and strengthen family relationships." (*Id.*)

## II.  DISCUSSION

### A.  Warden Qualifies for *In Forma Pauperis* Status.

To support his motion to proceed ifp, Warden has completed a preprinted form responding to certain questions about the state of his finances under penalty of perjury. (Dkt. No. 2.) The court has reviewed his responses and determines that he cannot afford to pay the filing fee. It will therefore grant Warden's motion to proceed ifp and allow his complaint to be filed without payment of the filing fee.

### B.  The Only Named Defendant Is Immune From This Suit for Damages.

The ifp statute also provides that the court shall dismiss any case in which a plaintiff is proceeding ifp if the court determines that . . . (B) the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2).

Although Warden references one Pulaski DDS employee by name and describes another who he states will be identified by name later in the case, the only defendant listed on his complaint is Pulaski DDS. And, as he acknowledges, Eleventh Amendment immunity applies to this entity, precluding any suit for money damages in federal court.[2]

Specifically, while the Eleventh Amendment to the U.S. Constitution "by its terms does not bar suits against a State by its own citizens," the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). As the Fourth Circuit recently has explained, state sovereign immunity derives from the structure of the Constitution itself, and the Eleventh Amendment is one "particular exemplification" of a state's immunity. *Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 429–30 (4th Cir. 2025) (describing sovereign immunity, its genesis, and the circumstances in which it applies). The court refers to "Eleventh Amendment immunity," as many courts do, as a "convenient shorthand" for state sovereign immunity. *Id.* at 430 n.5.

It is "settled that this protection extends also to state agents and state instrumentalities," or "to arms of the State and State officials." *Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222 (4th Cir. 2001) (cleaned up). The protection does not extend, however, to counties and municipalities. *Id.* Thus, in determining whether Pulaski DSS should be considered an "arm of the state" and entitled to state sovereign immunity, then, the court must "determine whether, under state law, [it] functions more like a county or municipality than like an arm of the State

---

[2] Warden's complaint does not allege an ongoing violation of federal law and does not seek any prospective injunctive relief, so the exception set forth in *Ex parte Young*, 209 U.S. 123, 130–31 (1908), is not applicable here. *See King v. Youngkin*, 122 F. 4th 539, 543 (4th Cir. 2024).

itself." *Kincaid v. Anderson*, No. 1:14-cv-27, 2015 WL 3546066 (W.D. Va. June 8, 2015) (cleaned up).

Another judge of this court recently addressed this precise issue, in a case where the plaintiff sued Rockbridge DSS. The court's reasoning is applicable here, as well:

> In Virginia "[s]tate law requires local departments of social services to perform their child welfare services subject to the direction of the State Commissioner of Social Services and in accord with regulations adopted by the State Board of Social Services." *Doe v. Mullins*, No. 2:10-cv-17, 2010 WL 2950385, at *1 (W.D. Va. June 22, 2010) (citing Va. Code § 63.2-319 (2007)). That "high degree of control exercised by the Commonwealth and corresponding lack of autonomy by local departments," support the conclusion that Rockbridge DSS "is properly characterized as an arm of the state, at least in its role of protecting children." *See id.* In *Doe v. Mullins*, the court held that Eleventh Amendment immunity similarly barred a plaintiff's constitutional claim pursuant to § 1983 against Wise County Department of Social Services. *Id.* Numerous other decisions in the Western District are to the same effect. *See, e.g., Kincaid*, 2015 WL 3546066, at *3 (holding that plaintiff's due process claim pursuant to 42 U.S.C. § 1983 against Russell County Department of Social Services was barred by sovereign immunity); *Nelson v. Herrick*, 3:11-cv-14, 2011 WL 5075649, at *11 (W.D. Va. Oct. 26, 2011) (holding that, "[i]n considering the degree of state control prescribed ... as well as the Virginia Code's treatment of social services organizations," that Albemarle County's Board and Department of Social Services "are both arms of the Commonwealth of Virginia, at least when it comes to their role in protecting children, and they are therefore shielded from suit by sovereign immunity"); *see also Daley v. Ferguson*, No. 3:95-cv-304, 1995 WL 17955326, at *3 (E.D. Va. June 26, 1995) (same as to Hanover County Board and Department of Social Services).

*Dudley v. Rockbridge DSS*, No. 6:22-CV-00069, 2023 WL 2090998, at *4 (W.D. Va. Feb. 17, 2023).

The court understands Warden's argument to be that the state sovereign immunity should not apply in this circumstance, because the case shows a systemic problem with Pulaski DSS and involved intentional conduct. But as the *Dudley* court also recognized, sovereign immunity

extends to any state-law intentional tort claims arising out of the actions of any of the entity's agents. *Id.*

Furthermore, even if Warden had asserted a claim against the individual investigator, Kyle, or other individuals, those individuals likewise are entitled to sovereign immunity, at least for claims against them in their official capacities seeking money damages. *King v. Youngkin*, 122 F.4th 539, 5343 (4th Cir. 2024). With regard to any potential claim against Kyle in her individual capacity, she may or may not be immune from suit depending on the allegations of any such claim. A state's immunity from suit also can extend to individual state actors or employees. *Messina v. Burden*, 321 S.E.2d 657, 661–62 (Va. 1984). But generally sovereign immunity will shield state employees from liability for acts of simple, but not gross, negligence, at least where the acts are discretionary and not ministerial. *Colby v. Boyden*, 400 S.E.2d 184, 186–87 (Va. 1991).[3] Because neither Kyle nor any other individual has been named, however, the court need not address that issue.

Because, as Warden's complaint is pled, it names only a defendant who is immune from the claims he brings, this case will be dismissed without prejudice.

### III. CONCLUSION AND ORDER

For the foregoing reasons, the court GRANTS Warden's motion for leave to proceed *in forma pauperis*. (Dkt. No. 2.) However, because Warden brings his claims against an entity that is entitled to Eleventh Amendment immunity, his claims must be dismissed. It is therefore

---

[3] In determining whether immunity extends to an individual defendant, the court would be required examine the factors set forth in *James v. Jane*, 282 S.E.2d 864 (Va. 1980). *James* asks the court to evaluate "(1) [t]he function the employee was performing; (2) [t]he state's interest and involvement in that function; (3) [w]hether the act performed by the employee involved the use of judgment and discretion; and (4) [t]he degree of control and direction exercised by the state over the employees." *Pike v. Hagaman*, 787 S.E.2d 89, 92 (Va. 2016); *See also Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 627 (E.D. Va. 2024), *aff'd,* No. 24-2270, 2025 WL 3046480 (4th Cir. Oct. 31, 2025) (setting forth same test and summarizing law regarding immunity for individual state actors).

ORDERED that the complaint (Dkt. No. 1) is DISMISSED WITHOUT PREJUDICE.  If Warden wants to amend his complaint to state a claim against any individual defendant, he should file an amended complaint not later than twenty-one days after entry of this order.

The Clerk shall provide a copy of this memorandum opinion and order to Warden.

Entered: January 28, 2026.

*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
Chief United States District Judge